Good morning. May it please the court, James Fife for Federal Defenders on behalf of Mr. Sacramento Diaz. I'll try to keep in mind to reserve one minute for rebuttal. Thank you. The District Court twice stated it drew an adverse inference of the facts pertinent to the role adjustment as a result of the defendant's counseled silence at the probation interview. Because the District Court penalized Mr. Diaz for exercising a constitutional right, as well as other grave errors in the analysis of role, the court should vacate the sentence and remand. Okay, this has already had one remand, right? That's correct. Okay. Under Quintero Leyva. Okay. And so, when we're looking at what the District Court did here, is there any indication that the District Court thought the guidelines were mandatory? No, not that the guidelines were mandatory. Okay. So, did the District Court get the guidelines wrong? It got its guideline analysis wrong, yes. Well, okay. But it did say somewhere, well, I know I have to consider the guidelines. I have to consider 3553A, right? Yes. And so, you think that the District Court, the magic words would have been, I start with the guidelines, they're not mandatory, and do that? I think that's one of the structural errors in this, is that the court, I think the overall overarching problem in this was that the court was very discounting of the role guideline, particularly the effect of Amendment 794 and Quintero Leyva. The court simply downgraded the guideline analysis in many ways, by saying the guideline itself was unworkable, that it was inherently inconsistent. And in fact, shared with everybody, his general practice is to do the 3553A analysis first, that is, come up with a sentence, and then do the guidelines, but only do the guidelines to the extent that it confirmed what he'd already decided was the appropriate sentence. So, he knows he has to consider the guidelines. There's no two ways about that from this record. Well, he's considering the guidelines to the extent that he's using it to confirm what he's already decided, which is what this court said in Lee, a court can't do. The court can't shape the guidelines to fit a preconceived sentence. Here, the court came in from the very first words out of its mouth were, this doesn't change one thing, one tiny little bit. Quintero Leyva, the Amendment 794 being retroactive, nothing changes one little bit. And he was right about that. He came in already determined that, I'm just going to give the same sentence as before. Well, okay. But he didn't. He didn't only because of the Pepper evidence. That's correct. But he gave the same guideline sentence because his role analysis, as he said, didn't change one little bit. Mr. Fife, did he use the guideline as the, quote, initial benchmark in this proceeding? No. My argument is he didn't. Okay. And here's my sense. I'm looking at C of the 3B1.2, fact-based determination. Did he make a finding as to the degree to which the defendant understood the scope and structure of the criminal activity? No. Did he make a finding as to the degree to which the defendant participated in the planning or organizing of the criminal activity? No. And did he make a finding as to the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority? He did, but it was completely unacceptable. He said he had decision-making authority because he decided to join the conspiracy. Okay. I went back and read the pre-sentence. This fellow was involved, this defendant was involved in drug running for five or six weeks. His three trips started in January. I think he was apprehended in January. He made the deal according to the pre-sentence with Jose to be the drug runner in December. He made three trips. Do I have the facts right? Three total, yes. Okay. And my sense is that the judge didn't, since there were no other persons named other than Jose, the judge didn't make a finding as to where he fit in with the, quote, drug conspiracy. Am I right? That's correct, Your Honor. As I kept arguing at the time of resentencing, I laid it out on page 88 of the ER. I laid out a chart where I went through every single one of the factors that have now been put in the application note and showed how that evidence lined up in favor of a role. All right. But you're, okay, your client didn't want to talk. Okay. And so I'm understanding. He invoked, yes. I'm understanding your argument. Does your client have the burden to show he played a minor role? Yes, he does. Okay. So if someone chooses not to answer and provide any information about that, can, is invoking, I'm taking it to say do you want to say if you invoke the fifth that, therefore, somehow that shifts the burden. The Court's still stuck with whatever it has. No, I don't mean that at all, Your Honor. Okay. What I mean is the problem is, as I cited three different cases in my brief, Ninth Circuit cases, Watt, LaPierre, Vance. The Court has said over and over again, it's one thing that if you refuse to talk and the Court doesn't have enough information to make the decision, that's your lookout. But it's a totally different thing when the Court holds it against you that you refuse to speak. Now, there was no lack of information here because we went on for 90 minutes discussing the facts of this case at sentencing. All that information was before the Court because Mr. Diaz gave a most thorough post-arrest statement. So as a matter of law, do the facts in this case require a minor role reduction? I believe it does because as you look at page 88 of the ER where I've laid out all the factors and the facts that support them, these are all facts that were produced in the post-arrest statement. The only facts that were ever discussed in this case, only two facts that didn't come from Mr. Diaz's statements was the amount and type of drug and the cargo, because he didn't know that at all. That was one of the reasons he's a lower down. He didn't know that information. And number two, that he was the sole driver, which is self-evident. Oh, and three times, too. Three times. No, that was information that he provided during the statement. I know, but the Court has three times. The Court doesn't have to look at three times the same way that you look at three times. I mean, can't you look at three times as not a minor role? I don't believe that's true, Your Honor, because back in 2011, in Amendment 755, or sorry, no, it was even further back in 2001, the Sentencing Commission said, well, look, we're taking this, the original 1987 guidelines said that you can get minor role only if you move a small amount of drugs one time. In 2001, the Sentencing Commission took that out and said, no, no, no, you can do it more than, no, we're not going to limit it to one time. But it's still abuse of discretion review, right? If we do not accept your argument that there was structural error in the way that the District versus using the guidelines as a starting point, if we think that there's no structural problem there, was there abuse of discretion in the minor role assessment? When the District Court says this is the third time he's done it, he's being paid $2,000, which is not a pittance, it's a considerable amount of money, he's a sole driver, occupant, aren't there sufficient factual findings to take it outside of the realm of abuse of discretion? No, Your Honor. I think just looking at this straightforwardly, that this was an abuse of discretion because there are five factors which Quintero Leyva said a court must consider. And these five factors... And how do we know that the District Court didn't consider these factors? Because we have these words. You're talking about a pre-experienced judge. We had 90 minutes of him and I talking about this, and he didn't mention three of the five factors. Well, he called it a policy discussion. The judge did. We were discussing the sentencing, and the fact that we were discussing it as a policy, it's only because I was trying to convince him that there was a big difference because of the amendment. Did you brief all of the factors? Did you brief and argue all of the factors? I did. I briefed them. So how do we know the District Court didn't consider that? Because he never mentioned them and he didn't in any way bring them into his analysis. And as I pointed out in my opening brief, in the United States v. Trujillo, this Court said under Rita that if you make a non-frivolous argument for a sentence, normally the Court is going to respond to that. There's nothing abnormal about this case. It's not frivolous that I cited all five of those factors. Those were non-frivolous arguments the Court should have, for your benefit, gone through every single one of those factors. I think Judge Callahan and Judge Wynn make a good point. The nature and extent of defendant's participation, the judge can take into account he did this three times. You're not entitled to this as a matter of right. I mean, the appellate court can't tell you that you win. Your Honor. It's a procedural error we're talking about here, not substance. Am I correct? Your Honor, it is substantive because the fact that even if he did it three times, which he said originally, and I argued in my brief, is law of the case, he can't consider that against him because he made that determination in the original sentencing. He said twice, I have no way holding these multiple runs against you. Suddenly we come back for resentencing and everything changes. Now he's using it. But even if you focus on the three prior runs, there are five factors that have to be considered. That at most goes to one of them. At most goes to one. So is the guideline range 108 to 135? Pardon? Is the guideline range 108 to 135? I believe without roll, yes. And then the first time he got 70 and the second time he got 60, right? Yes. Am I correct on the numbers? No, he got 70 both times. He gave 60 months for 10 months off for Pepper. Right. So the second time on remand he got 60? Yes. Okay. You're over your time, but I'll give you a minute for rebuttal. Okay, thank you. Okay, thank you. Okay. Good morning, Your Honors. Good morning, Your Honors. May it please the Court, Emily Kiefer for the United States. It sort of seems like the District Court probably had a discussion that now he's being hoisted in his own petard here. So tell me why that doesn't complicate your case and what is your best argument to affirm the District Court and say that the District Court considered the appropriate factors and factored in the guidelines appropriately and in light of his comments about the defendant not wanting to talk. Give me your best case. I understand, Your Honor. I agree entirely. At ER 18, the District Court even identified and said to Defense Counsel, don't argue that I thought the guidelines were not mandatory, that I'm not applying the guidelines. So in that discussion, the District Court absolutely affirmatively said that. And the best argument here, Your Honor, looking to ER 29, the District Court here identified the applicable standards, said it's whether the defendant has proven he's substantially less culpable than the average participant. At that same time, at ER 29 and at ER 61, I'm sorry, 69, the District Court said it considered all five factors under 3B1.2. The arguments of counsel addressed all five factors, and the District Court applied the multi-factor test therefore. No one fact by itself was dispositive. Well, what if the District Court just doesn't mention everyone or make a factual finding? I think counsel for the appellant is arguing, saying that means he didn't consider it. So how do we look at that? In a couple of ways, some legal, some factual. So the legal way to look at that is that this court does not require the court to tick through every single one of the factors, either under 3553 or under 3B1.2. The counsel's arguments addressed those factors, and the District Court identified facts relevant to each of those factors. Now, it's important also to remember that the District Court was presented with a very limited set of facts here. The only facts that were presented as to the defendant's post-dress statement are summarized in a single paragraph, seven lines, paragraph 6 of page 3 in the pre-sentence report. And the District Court, in making its ruling on minor role, referred to each of those five facts in that paragraph. So, for example, the defendant said in his post-dress statement he was paid $2,000. He said that he'd been engaged in drug smuggling for more than a month, that he had done three prior runs. This was the fourth drug run that he was arrested on. Counsel for Appellant said it was three total. You're saying it's four total if it's three prior and one. Exactly, Your Honor. That is what the defendant's post-dress statement indicates. It's at paragraph 6, page 3 of the PSR. Defense counsel filed no objections to the PSR, and the District Court was entitled to take that as a matter of truth, therefore. So the defendant basically only conveys seven lines in a single paragraph of the pre-sentence report as his full summary of what he said post-arrest. And that included that he was paid $2,000, he had been engaged in smuggling for more than a month, he had done it on three prior occasions, he was recruited by an individual named Jose, and he had brought the drugs to three different locations in California prior to his arrest in this case. Well, let me ask you this. There was discussion about, well, he invoked his fifth. Now, would it be wrong, from your perspective, if the District Court denied the role reduction because he invoked his Fifth Amendment right to remain silent? The District Court would not be wrong to deny the minor role adjustment if the exercise of that constitutional right led to an absence of information, and that's what we have here. Let me focus on that because I think there were a lot of musings on the record, and it's not entirely clear to me whether the District Court, because I think he said it both ways, right? If somebody invokes and refuses to talk to probation, that's fine, but then that leaves you with whatever record you've got, as Judge Callahan pointed out. And the District Court, on a couple of occasions, said that. It's like, you didn't talk to probation, and probation's here to help the court, and so now I've got to assess whatever I've got on this record here, so now he's claiming he's a media courier and then kind of testing that against the evidence that really arose out of his post-arrest statement. But towards the end of the sentencing hearing, there was an instance where the AUSA, I take it wasn't you, but the AUSA wanted to clarify that very point, Your Honor, are you considering the fact that he didn't talk to probation? And the District Court said something along the lines of, well, yes, I'm considering it. Does that create some murkiness in the record as to whether the court, in fact, drew an adverse inference from the failure to speak to probation and then held that against him such that we need to send it back for clarification? No, Your Honor, and for two reasons. First, as Your Honor noted, the District Court very clearly at ER 70 to 71 stated all of the facts, the entire universe of facts, that it was basing its minor role decision on, and all of those facts are either drawn from the single-paragraph summary of the defendant's post-arrest statement and the readily observable facts of the defendant's arrest, that he was driving a vehicle that contained a significant amount of methamphetamine. So all of those facts are completely divorced and devoid from any adverse inference that the defense says the District Court. Is there an argument at the end in response to the AUSA's request for clarification? I understand Your Honor's concern, and what I would say is that we know for certain what this District Court found its decision based on. So if this defendant had reiterated the same facts that he made to the agent post-arrest during a pre-sentence interview with the probation officer, the District Court on those same facts would have denied a minor role adjustment. So your argument is that the court's response was just a stray remark, that we know he didn't draw an adverse inference and relied on it because he already articulated the facts upon which he based the sentence? Did I get the argument correct? Yes, among other things. And the second point I would make is that there really is no – there are no mitigating facts that the defendant supplied during his post-arrest statement. So there's no real adverse inference that the District Court drew or did not draw from that defendant's post-arrest statement. What the defendant here would have was— Well, I mean, I think the argument, the potential argument for the defense, is that because the court said that he held it against the defendant, the adverse inference is that because you didn't speak to probation, I don't know more about the case, right? And if that factors into the decision as to what the appropriate sentence is, then that would be inappropriate, wouldn't it? If it were true that that factored into the District Court's decision, that would be inappropriate. However, it's not inappropriate for the District Court to recognize it had a limited factual record. And in response to defense's specific objection, saying that the District Court was speculating about why the defendant did or did not speak to the probation officer, the District Court appropriately responded and said, as concretely as he possibly could, at ER 70 to 71, this is the entire universe of facts I'm basing this decision on. Go ahead. And that universe of facts was inconsistent with the grant of a minor role adjustment. The defendant identified only one other person, either by name or by function or role in his post-arrest statement, Jose. At ER 88 and at ER 30, the defense counsel confirmed for the District Court that there were no other individuals that the defendant encountered, either by name or by role or function, during his entire month of drug smuggling. So the District Court did not err in failing to compare the defendant to other participants. It simply combined its analysis to the facts that the defense provided, specifically what the defendant did and his role relative to Jose. What the defendant on appeal is asking this court to do is what this court in Rojas, Milan and Rosas expressly said it should not do, which is look to the entire structure of the drug trafficking organization as a general matter and compare the defendant's role to that. So at footnote 5 in Rojas, Milan, this court noted the District Court was not, could not rely on just generally the whole collective of people who send out the drugs and distribute them. In Rosas, this court likewise recognized that the District Court, that an argument that there must be some unknown network of people preceding the defendant, that that would be insufficient to warrant a minor role adjustment. And that's exactly what we have here. We have the defendant outlining a very limited set of facts in a single paragraph of the PSR, the District Court crediting each of those facts and denying role on that basis. He did not abuse his discretion in finding that the defendant didn't meet his burden. Ms. Kiefer, we got a background here. The Sentencing Commission says this has been used too sparingly. We're going to adopt a totality of the circumstances. We then have a panel of this court that looked at the first record and said, we can't tell what he did. Then it goes back and he says, I'm going to arrive at a sentence and then figure out the guideline. Why isn't that procedural error? It's not procedural error for a couple of reasons, Your Honor. In particular, before when this court sentenced the defendant, the five factors, the non-exhaustive list of factors was not in effect at that time. So now that list of five factors is in effect when it goes back on remand. The District Court expressly references all five factors at ER 29 and at ER 69 and identifies a number of facts. And those facts that the District Court did identify relate expressly to factors 1, 4, and 5. So, for example, the number of times that the defendant has done this, the amount of time he was involved, the amount he was paid, all of those relate to the factors, at least three of the factors under 3B1.2, specifically the nature and extent of his participation. I had the sense that he was praising Hurtado, the case that he had been affirmed because of Judge Silberman's opinion that he really liked, rather than do the analysis. Who were the other average participants? The defendant didn't identify any. So at this point, given his defendant's burden, he hasn't met that burden of showing he's substantially less culpable than the average participant. And the District Court's reference to Hurtado was proper in that the facts identified by Hurtado remain relevant today. So the amount of drugs, the type of drugs, as this Court recognized in Rodriguez-Castro, the inference can be drawn that a defendant who has a significant amount of hard narcotics is not a lower-level person, is not somebody who doesn't understand the scope and structure of the activity.  The nature and extent of their activity, factor four, weighs against minor role, and the fact they're being paid also weighs against minor role. The only thing in Hurtado that was in tension at all with the amendment is the idea of a single fact or factor being dispositive. And here, the District Court identified facts that relate to at least three of the five factors under 3B1.2. All right. Unless the panel has any additional questions, we've gone over your time. Thank you for your argument. Thank you. You have one minute for rebuttal. Thank you, Your Honor. Just one point. With all respect, Judge Nguyen, I don't think that the constitutional issue is murky. It's perfectly clear. The judge said, I absolutely am using this against this defendant when he confirmed that to when the prosecutor asked about it. Number two, he knew it was a Fifth Amendment invocation because he said this is tactical and he's doing it to avoid something coming back and biting him. He knew it was an invocation of the Fifth Amendment. And third. But he also said, the reason I said murky is that, yes, I agree with you, that that's probably the most problematic part of the transcript read in isolation. But he also said in other parts of the transcript that because you didn't speak to probation, this is what I have. This is also what he said. This is on page 65 to 66 of the ER. And this is exactly his response to it when he's doing his judgment analysis. So I asked myself, why not? Why didn't you talk to probation? Why didn't you tell probation? And here's the reason why he didn't, I suspect. I can't prove it. But because he was afraid that if he talked to probation, he might say something, he might slip up and say something that might work to his detriment. You know, it's a tactical decision that he made. But the technical decision leads me to believe that perhaps this defendant knew a lot more or knows a lot more than he leads us to believe. He drew a negative inference from his invocation that he knew more than he was telling. And he used that over and over to just discount everything that the defense had said. He said, you're not telling us everything. This connects with his earlier discussion where he said, you know, every defendant has a motive to come in here and lie. I've been burned before. I've had defendants come in here and tell me one thing. I can't trust the government either. He said this was an unachievable burden for a typical courier. And I think not only does the constitutional violation by itself require remand under LaPierre, Advance, and Watt, but the fact that this judge applied a standard that it admitted on the record, no typical courier can meet this standard. That is totally contrary to the point of Amendment 794, which was, as Judge Pratt pointed out, to make it less sparingly applied. All right. We've allowed you extra time. Thank you both for your argument in this matter. This will stand submitted.
judges: Callahan, Nguyen, Pratt